IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS GREGORY DODSON, II, § | | |
| TDCJ #1250824, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-11-2205 |
| § | | |
| KENNETH L. GASTON, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

Dennis Gregory Dodson, II (TDCJ #1250824, former TDCJ #462523) is a state inmate in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ").  Dodson has filed a *pro se* complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement. Dodson has submitted a memorandum in support of his claims and a motion to proceed *in forma pauperis*.  After conducting a preliminary review of the pleadings, the Court concludes that this case must be **dismissed** for reasons set forth below.

### I.     BACKGROUND

Dodson is presently incarcerated at the Ellis Unit in Huntsville, Texas.  Dodson sues the following supervisory officials and correctional officers employed by TDCJ at the Ellis Unit facility:  (1) Assistant Warden Kenneth Gaston; (2) Head Warden Diana Kukua; (3) Assistant Warden John Werner; (4) Sergeant Paul E. Miller, Jr.; and (5)

Officer Billy Harris. The complaint, which stems from another lawsuit filed by Dodson in this district, is summarized below.

On or about June 10, 2010, Dodson filed a civil rights complaint under 42 U.S.C. § 1983 against Ellis Unit Food Service Manager Dianna Field, Correctional Officer Christopher Chornister, Warden Eileen Kennedy, Assistant Warden Kenneth Gaston, and Assistant Warden John Werner. *See Dodson v. Field, et al.*, Civil No. H-10-2086 (S.D. Tex.). In that case, Dodson complains of a retaliatory conspiracy to deny him a promotion in classification status or change in job assignment.

Dodson filed a new civil rights complaint against Assistant Warden Gaston and the above-referenced defendants on June 9, 2011.[1] Dodson alleges in this case that, on March 8, 2011, Warden Gaston threatened his life for filing a lawsuit against him and several other prison officials. Dodson complains further that, on May 1, 2011, Officer Harris seized all of his legal property pertaining to the lawsuit in Civil No. H-10-2086. Harris reportedly copied all relevant material from that lawsuit and commented that "now they have the upper hand on him." Shortly thereafter, on May 4, 2011, Dodson claims that Sergeant Miller assaulted him in his cell. Two inmates reportedly witnessed the assault.

In his new complaint, Dodson accuses Assistant Warden Gaston and the other defendants of engaging in a conspiracy to violate his constitutional rights. In particular,

---

[1] The Clerk's Office filed the complaint on June 10, 2011. Both the complaint and the certified inmate trust fund account statement in this case are dated June 9, 2011, indicating that Dodson placed his pleadings in the prison mail system on that day.

Dodson claims that he is a victim of retaliation, intimidation, and witness tampering in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, among other things.  Dodson requests an immediate hearing.  He also seeks injunctive relief in the form of relocation to a different prison facility and protection by the federal government.  The Court concludes, however, that the complaint must be dismissed at this time because Dodson admits that he has not exhausted grievance procedures that are available at his institution.  (Docket No. 1, *Complaint*, at 3; Docket No. 2, *Memorandum*, at 7).

## II.     DISCUSSION

Because Dodson is incarcerated, this lawsuit is governed by the Prison Litigation Reform Act (the "PLRA").  The PLRA prohibits any action by a prisoner in federal court under 42 U.S.C. § 1983 concerning "prison conditions" until "such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a).   The exhaustion requirement found in § 1997e(a) applies to all inmate suits about prison life, "whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The Supreme Court has repeatedly emphasized that § 1997e(a) mandates exhaustion of *all* administrative procedures before an inmate can file any suit challenging prison conditions.  *See Booth v. Churner*, 532 U.S. 731, 739 (2001); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *see also Jones v. Bock*, 549 U.S. 199, 212 (2007) (confirming that "[t]here

is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

The Fifth Circuit has acknowledged that "[q]uibbles about the nature of a prisoner's complaint, type of remedy sought, and the sufficiency or breadth of prison grievance procedures" have been foreclosed by Supreme Court precedent on the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a). *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001) (citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)). Thus, the Fifth Circuit has consistently mandated that a prisoner must exhaust his administrative remedies by complying with applicable grievance procedures before filing a federal civil rights lawsuit related to prison conditions. *See, e.g. Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004).

It is well established that TDCJ has a formal two-step administrative grievance process. *See Johnson*, 385 F.3d at 515; *see also Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable); *see also Almond v. Tarver*, 468 F. Supp. 2d 886, 896 (E.D. Tex. 2006) (citing 37 TEX. ADMIN. CODE ANN. § 283.3 (West 2006)). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. *See Johnson*, 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has up to ten days to file a Step 2 grievance to appeal an unfavorable result. *See id.* Step 2 grievances are reviewed at the

state level. *See id*. A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *See id*. (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

Because lack of exhaustion is an affirmative defense, inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. In this case, however, Dodson concedes in his complaint and his supporting memorandum that he has not exhausted the grievance procedure available at the prison unit. (Docket No. 1, *Complaint*, at 3; Docket No. 2, *Memorandum*, at 7). Where the face of the complaint makes clear that an inmate has failed to exhaust administrative remedies, a district court may dismiss the complaint without requesting an answer from the defendants. *See Dillon v. Rogers*, 596 F.3d 260, 272 n.3 (5th Cir. 2010) (noting that sua sponte dismissal is appropriate only where "failure to exhaust is apparent on the face of a plaintiff's complaint") (citing *Carbe v. Lappin*, 492 F.3d 325, 327-28 (5th Cir. 2007)); *see also Martinez v. Bus Driver*, 344 F. App'x 46, 48, 2009 WL 2823628, *2 (S.D. Tex. 2009) (affirming dismissal for failure to exhaust after finding that the face of the complaint makes clear that the plaintiff failed to exhaust his administrative remedies as required before bringing suit); *Gonzalez v. Crawford*, 2011 WL 1057577, *1 (5th Cir. 2011) (concluding that, because the plaintiff conceded that he did not complete the administrative review process required by TDCJ, the district court did not err in granting summary judgment based on his failure to exhaust).

The Supreme Court has emphasized that the exhaustion requirement found in the PLRA, 42 U.S.C. § 1997e(a), mandates "proper exhaustion," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), which demands compliance with prison procedural rules.  As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter*, 534 U.S. at 524.  By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."  *Id.* (citing *Booth*, 532 U.S. at 737).  In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy.  *Id.* (citations omitted).

As set forth above, Dodson concedes that he has not completed the administrative remedy process that is available at the Ellis Unit.  (Docket No. 1, *Complaint*, at 3).  Dodson maintains that exhaustion should be excused because the defendants have actively interfered with his "access to courts" and because he fears attack by other officers in retaliation for pursuing grievances.  (Docket No. 2, *Memorandum*, at 7).  However, the record in the lawsuit on which Dodson's retaliation claims are based shows that he has filed numerous pleadings within the last six weeks.  *See Dodson v. Field, et al.*, Civil No.

H-10-2086 (S.D. Tex.). That record also shows that Dodson is familiar with administrative procedures in place at the Ellis Unit and that he has filed numerous grievances as well as other official requests. *See id.* (*Statement of Facts & Exhibits*, Docket No. 6). Dodson does not allege specific facts showing that his access to courts has been abridged. More importantly, Dodson does not allege facts showing that there is an impediment to filing grievances or that the grievance process is actually unavailable to him. *See Dillon*, 596 F.3d at 267-68. Under these circumstances, failure to exhaust is not excused.

The Supreme Court has made clear that prisoners may not deliberately bypass the administrative process by flouting an institution's procedural rules. *See Woodford*, 548 U.S. at 96-98. Dodson's failure to complete the grievance process violates the PLRA's exhaustion requirement found in § 1997e(a), which mandates exhaustion *before* filing suit. *See Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998) (affirming the dismissal even under circumstances that would seem "inefficient"). Because it is apparent from the pleadings that the plaintiff has failed to exhaust available administrative remedies before filing suit in federal court, his complaint must be dismissed. *See Wright*, 260 F.3d at 359. The dismissal is without prejudice to re-filing once this claim is properly exhausted. *See id.*

### III. CONCLUSION AND ORDER

Accordingly, based on the foregoing, the Court **ORDERS** as follows:

1. The plaintiff's motion for leave to proceed *in forma pauperis* (Docket No. 5) is **GRANTED**. The Court will not enter a collection order for the filing fee at this time because the plaintiff's suit is premature.

2. The remaining motions filed by the plaintiff for a hearing (Docket No. 2) and for transfer to a federal prison (Docket No. 3) are **DENIED**.

3. The plaintiff's complaint is **DISMISSED** without prejudice for failure to exhaust administrative remedies.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 22nd day of June, 2011.

_____

Kenneth M. Hoyt
United States District Judge